STATE of Wisconsin, Plaintiff-Respondent,

v.

Reginald FOSTER, Defendant-Appellant. †

Court of Appeals

*No. 89–0322–CR. Submitted on briefs August 1, 1989.—Decided September 26, 1989.*

(Also reported in 448 N.W.2d 298.)

† Petition to review denied.

For the plaintiff-respondent the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, and *James M. Freimuth,* assistant attorney general.

For the defendant-appellant the cause was submitted on the briefs of *Carlson & Huppertz, S.C.,* with *Matthew H. Huppertz* of counsel, of Waukesha.

Before Moser, P.J., Sullivan and Fine, JJ.

FINE, J. Reginald Foster appeals from a judgment convicting him of armed robbery, in violation of sec. 943.32(1)(b) and (2), Stats.,[1] and from the trial court's

---

[1]Section 943.32(1)(b) and (2), Stats., provides:

**Robbery. (1)** Whoever, with intent to steal, takes property from the person or presence of the owner by either of the following means is guilty of a Class C felony:

---

order denying him post-conviction relief. Foster raises one issue on appeal. He contends that his trial counsel had an actual conflict of interest that rendered the lawyer ineffective, *per se,* because both the lawyer and a lawyer who briefly represented a potential witness were both employed by the office of the State Public Defender. We affirm the judgment and order because Foster has not demonstrated by clear and convincing evidence that his counsel actively represented actual conflicting interests. *See State v. Kaye,* 106 Wis. 2d 1, 7–9, 315 N.W.2d 337, 339–340 (1982).

## I.

The pertinent facts of this case are straightforward and are not disputed. The armed robbery concerned Foster's confrontation with a sixteen-year-old girl wearing a suede-leather jacket. The jury heard four substantially similar versions.

The victim testified that she had just left a store when Foster approached her on the street, grabbed her by the collar, and demanded that she give him her jacket. She started to comply by undoing the buttons when, according to her testimony, "he reached inside his inside coat pocket and pulled out a little silver object that appeared to me to be a gun." She testified that Foster then "clicked the top part of the hammer, put the gun to

---

. . ..
 (b) By threatening the imminent use of force against the person of the owner or of another who is present with intent thereby to compel the owner to acquiesce in the taking or carrying away of the property.
 (2) Whoever violates sub. (1) by use or threat of use of a dangerous weapon or any article used or fashioned in a manner to lead the victim reasonably to believe that it is a dangerous weapon is guilty of a Class B felony.

my head and quoted, 'Bitch, do you want to die for that jacket?' " The girl removed the jacket and handed it to Foster, who, at her request, checked to see if there were any of her keys in the pocket. While Foster was checking the jacket's pockets, another man, Gerald Herd, approached, and, according to the victim's testimony "pretended to say, 'Give her back her jacket.' " Foster refused, and the two men fled.

A seventeen-year-old girl who was with the victim at the time of the robbery also testified at the trial. She told the jury that she and the victim had been walking down the street when Herd approached her and they started talking. She and Herd became separated from the other girl, whom she saw with Foster: "I turned around and he had her jacket in his hand and he had something up to her head." The seventeen-year-old then turned to Herd:

> I said, "He's going to shoot her." And [Herd] started laughing. He said, "I don't know him." I said, "Well, ask him to get the gun away from her head." He said, "Well, he's just trying to scare her."

She described the gun as a black object, noting that "[e]verything looked black because it was dark out." She testified that Herd went over to Foster and told him to return the jacket, but that Foster refused and the two men fled.

A Milwaukee police detective testified that when he questioned Foster after Foster's arrest, Foster told him that he took the jacket after flashing a glove in the victim's face, that Herd had asked Foster to return the jacket, and that Foster had sold the jacket for $65 because he needed the money, which he used for gambling.

Foster testified at the trial that he was with Herd when he, Foster, saw the victim wearing a jacket he thought was his. Foster said he told Herd that he was going to get his jacket back, but that Herd demurred. Foster told the jury that he took the jacket from the victim, but denied having a gun. Foster also testified that he refused Herd's request to return the jacket.

As noted, the jury convicted Foster of armed robbery. The trial court sentenced him to an indeterminate term of incarceration not to exceed nine years.

## II.

## A.

Foster contends that he is entitled to a new trial because of what he submits was his trial lawyer's conflict of interest. He argues, in essence, that the mere fact that his trial counsel and the lawyers who briefly represented Herd were all assistant state public defenders is enough to gain him a new trial. We disagree.[2]

---

[2]We pass for another day the question of whether the office of the State Public Defender can be considered as one law firm for *Kaye's* actual-conflict-of-interest analysis. *Compare People v. Robinson,* 402 N.E.2d 157, 160–163 (Ill. 1979) (rejecting argument that individual attorneys in public defender's office are employees of one "firm" for conflict-of-interest analysis), *with Turner v. State,* 340 So. 2d 132, 133 (Fla. Dist. Ct. App. 1976) (public defender's office is one "firm" for purpose of conflict-of-interest analysis). *See also* Annotation, *Circumstances Giving Rise to Prejudicial Conflict of Interests Between Criminal Defendant and Defense Counsel—State Cases,* 18 A.L.R. 4th 360, 394–395, 404–416 (1982 & Supp. 1988). *Cf. Burger v. Kemp,* 483 U.S. —, 107 S. Ct. 3114, 3120 (1987) (assuming, but not deciding, that two law partners in a private law firm may be considered as

The following is an outline of the facts material to our consideration of Foster's contention.

First, his trial counsel was an assistant state public defender.

Second, Herd was charged with obstructing an officer under sec. 946.41, Stats., for allegedly telling investigating police officers that the man who took the victim's coat was not Foster but another person.

Third, Herd was represented at his initial appearance on the obstructing charge by an assistant state public defender (not Foster's trial counsel). At the post-conviction hearing, the assistant state public defender testified that it is routine practice for the public defender's office to represent multiple defendants charged with the same crime at the initial appearance and that conflicts are resolved later by the appointment of outside counsel. He testified that at the time he represented Herd, he was not aware that there was any potential conflict stemming from that representation, and that he did not learn anything from Herd about Foster and the armed robbery charge. He also testified that he first discussed Herd with Foster's trial counsel after Foster's trial.

Fourth, after his initial appearance, Herd was represented by a different assistant state public defender (also not Foster's trial counsel). Although this second lawyer never met, or talked to, Herd, she sent him a letter informing him of her appointment. Herd never received the letter. The lawyer represented Herd in a pre-trial proceeding before a judicial court commissioner even though Herd was not present. Removed as Herd's lawyer prior to the start of Foster's trial, she was replaced by an attorney not employed by the office of the State Public Defender.

one attorney for the purpose of determining whether their representation of co-defendants is an actual conflict of interest).

Fifth, in connection with the preparation of Foster's case, Foster's trial counsel and an investigator employed by the office of the State Public Defender interviewed Herd. Neither were then aware of Herd's connection with that office, however.

Sixth, both the prosecution and the defense told the trial court that they wanted to call Herd as a witness at Foster's trial.

Seventh, Herd told the trial court that he would rest on his Fifth Amendment rights and would not testify.

Eighth, when Herd was initially questioned by the trial court as to whether he wished to testify in the Foster case, Herd was unaware that he had any lawyer.

Ninth, Herd was called as a defense witness during Foster's trial. He was represented by counsel not employed by the office of the State Public Defender, and refused to testify.

Tenth, the trial court ruled that Herd's statements to the investigator and to Foster's lawyer were not admissible by virtue of the rule against hearsay.

### B.

A defendant is entitled to a new trial if he can demonstrate by clear and convincing evidence that the lawyer representing him at trial "actively represented a conflicting interest." *Kaye,* 106 Wis. 2d at 8-9, 315 N.W.2d at 340 (interpreting *Cuyler v. Sullivan,* 446 U.S. 335 [1980]). Specific prejudice need not be shown. *Ibid.* As the United States Supreme Court has explained:

> In *Cuyler v. Sullivan,* 446 U.S., at 345-350, the Court held that prejudice [to a defendant] is presumed when [defense] counsel is burdened by an actual conflict of interest. In those circumstances,

counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties . . .. Even so, the rule is not quite the *per se* rule of prejudice that exists [when there is "an actual or constructive denial of the assistance of counsel altogether"]. Prejudice is presumed only if the defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance."

*Strickland v. Washington,* 466 U.S. 668, 692 (1984) (quoting *Cuyler,* 446 U.S. at 350, 348. *Accord, Burger,* 107 S. Ct. at 3120. In evaluating Foster's motion for a new trial, the trial court concluded that although there was a theoretical conflict of interest, there was no "actual conflict" because Foster's trial counsel's performance was not adversely affected. Foster contends that this conclusion is at odds with *Kaye's* pronouncement that proof of specific prejudice need not be shown. *See Kaye,* 106 Wis. 2d at 8–9, 315 N.W.2d at 340. We disagree.

Foster's argument blurs the significant distinction between dual representation and any resulting deficient performance by the lawyer on the one hand, and, on the other hand, the prejudice that might flow from that deficient performance. There is an "actual" conflict of interest only when the lawyer's advocacy is somehow adversely affected by the competing loyalties. *Kaye,* 106 Wis. 2d at 8–13, 315 N.W.2d at 340–342. *See also Burger,* 107 S. Ct. at 3120–3121. If the lawyer's performance for the complaining client is compromised by the dual representation, the client need not prove prejudice because prejudice is presumed. *Burger,* 107 S. Ct. at 3120; *Strickland,* 466 U.S. at 692; *Kaye,* 106 Wis. 2d at 8–9, 315 N.W.2d at 340.

393

The assistant state public defenders who represented Herd, for a limited time and in a limited context, and Foster, were not actively representing conflicting interests, and did not have an actual conflict of interest. Like the defendant in *Kaye,* Foster has not demonstrated by clear and convincing evidence that he and Herd "had divergent positions" and that Foster's trial counsel did something, or failed to do something, "that would have benefited one and harmed the other." *Kaye,* 106 Wis. 2d at 13, 315 N.W.2d at 342. Stated another way, the performance of Foster's trial counsel was not compromised by the public defender's office's representation of both Foster and Herd. Foster makes no real argument to the contrary. Rather, Foster relies on an interpretation of the *per-se* rule that has no basis in law. *See State v. Franklin,* 111 Wis. 2d 681, 686, 331 N.W.2d 633, 636 (Ct. App. 1983) ("The defendant must show by clear and convincing evidence that an actual conflict of interest existed; it is not sufficient that he show that a mere possibility or suspicion that a conflict could arise under hypothetical circumstances."). There was no "actual conflict of interest" here, and Foster is not entitled to a new trial.

*By the Court.*—Judgment and order affirmed.