STATE of Wisconsin, Plaintiff-Respondent,†

v.

Michael LOVE, Defendant-Appellant.

Court of Appeals

*No. 97–2336–CR. Submitted on briefs March 9, 1998.—Decided March 19, 1998.*

(Also reported in 579 N.W.2d 277.)

†Petition to review granted.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Philip J. Brehm* of Janesville.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, with *Maureen McGlynn Flanagan*, assistant attorney general.

Before Eich, C.J., Dykman, P.J., and Deininger, J.

EICH, C.J. Michael Love was convicted of burglary in 1994, after pleading guilty to the charge. Sentence was withheld and he was placed on probation for three years. His probation was revoked in 1996 and he was returned to court and sentenced to ten years in prison. He moved for resentencing, claiming that the sentencing proceedings were tainted because his attorney, an assistant public defender, was a former prosecutor who had represented the State at his original sentencing hearing two years earlier. The circuit court denied the motion and Love appeals.

We hold that the appearance of a conflict of interest that arises from this situation—where the defendant's attorney at post-revocation sentencing proceedings had appeared on behalf of the State at the original sentencing hearing—is so strong that nothing more need be proved to warrant a remand for resentencing. We therefore reverse the circuit court's order denying Love's motion.

The facts are not in dispute. Love was charged with burglary in January 1994. He was convicted on his plea of guilty and appeared before the court for

2

sentencing on December 13, 1994. At the sentencing hearing, the assistant district attorney for the State was Brenna Lisowski.[1] The presentence investigation report recommended a five-year sentence to the intensive sanctions program. Pursuant to a plea agreement, however, Lisowski and Love's attorney jointly recommended that the trial court withhold sentence and place him on probation for three years. As indicated, the court accepted the recommendation.

Shortly thereafter, Lisowski left the district attorney's office to take a position as an assistant public defender in Rock County. In that capacity, she represented Love on an unrelated charge and also at the probation-revocation hearing on the instant burglary charge. Lisowski appeared with Love at the post-revocation sentencing hearing in August 1996. Both Love's probation agent and the prosecutor recommended that he be sentenced to prison for ten years—the maximum penalty. Lisowski asked the court to limit its sentence to five years. The trial court imposed the maximum ten-year term, noting that, in light of his record, Love had been given a break when he was placed on probation the first time.

Moving the court for resentencing, Love argued, among other things, that Lisowski's representation of him under the circumstances constituted an impermissible conflict of interest under SCR 20:1.9 (West 1998), which prohibits lawyers from representing persons with adverse interests in the same or similar proceedings.[2]

---

[1] Another assistant district attorney had issued the information and negotiated the plea agreement with Love.

[2] The rule provides in part:

**CONFLICT OF INTEREST: FORMER CLIENT**

3

After hearing Lisowski's testimony—in which she stated, among other things, that she had no recollection of having previously represented the State in Love's case—the trial court discussed the case history at some length and concluded that, given Lisowski's testimony and the fact that the record of the initial sentencing hearing indicated that she was only filling in for another prosecutor at the time, there was no conflict of interest within the meaning of the supreme court rule.

The State's position on appeal is that, to prevail on his claim, Love must affirmatively prove, by clear and convincing evidence, not only that Lisowski was operating under an "actual" conflict of interest but that the conflict adversely affected her performance in representing him, and the State argues that he has not made such a showing. As support for the major premise of its argument, the State cites a series of cases, culminating in *State v. Street*, 202 Wis. 2d 533, 542, 551 N.W.2d 830, 835 (Ct. App. 1996), which sets forth the standard for evaluating claims of ineffective assistance of counsel based on a conflict of interest arising from the defense lawyer's simultaneous representation of one or more co-defendants or other principals in the case. We said in *Street:*

> In order to establish a Sixth Amendment violation on the basis of a conflict of interest, a defendant who did not raise an objection at trial must demonstrate

A lawyer who has formerly represented a client in a matter shall not:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents in writing after consultation . . . .

SCR 20:1.9 (West 1998).

4

by clear and convincing evidence that his or her counsel had an actual conflict of interest and that the actual conflict of interest adversely affected his or her lawyer's performance.

*Id.*

However, we do not believe that rule should be applied in this case. The conflict of interest in *Street*—and in all the other cases the State cites to support its argument—relates to counsel's simultaneous or earlier representation of a principal participant in the crime with which the defendants were charged—either co-defendants or witnesses or, as in *Street*, the State's principal investigator.[3] We think a

---

[3] In *State v. Street*, 202 Wis. 2d 533, 543, 551 N.W.2d 830, 835 (Ct. App. 1996), the defendant's attorney was, at the time, also representing the police detective in charge of the investigation in his ongoing divorce action. The other cases the State cites are to the same effect. In *Cuyler v. Sullivan*, 446 U.S. 335, 337 (1980), a single lawyer represented three co-defendants, all charged with the same homicide and all tried together. In *State v. Kaye,* 106 Wis. 2d 1, 6, 315 N.W.2d 337, 338–39 (1982), the defendant argued that his lawyer's simultaneous representation of a co-defendant constituted ineffective assistance because that representation must necessarily limit any argument at sentencing that the defendant was less culpable than his co-defendant. In *State v. Owen,* 202 Wis. 2d 620, 638, 551 N.W.2d 50, 58-(Ct. App. 1996), the defendant, charged with recklessly injuring his infant child, claimed a conflict of interest existed because his counsel was a public defender and the public defender's office had represented his wife, one of the principal witnesses against him, in an earlier spousal abuse case. And in *State v. Foster,* 152 Wis. 2d 386, 390, 448 N.W.2d 298, 300 (Ct. App. 1989), the defendant sought a new trial because his attorney was a public defender and the same office briefly represented a witness to the crime with which he had been charged.

very different situation faces us here, where the defense counsel at sentencing was the former prosecutor in the case. In the multiple-representation situation, requiring proof of actual prejudice is justified because such representation is often beneficial to the defendants, and, as a matter of public policy, it should be disallowed not in all cases but only where actual conflict and prejudice are present. In *Cuyler v. Sullivan*, 446 U.S. 335 (1980)—a case the State principally relies upon—for example, the Supreme Court stated that a court "[should not] presume that the possibility for conflict has resulted in ineffective assistance of counsel," because such a presumption "would preclude multiple representation even in cases where a common defense gives strength against a common attack." *Id*. at 348 (quoted sources and internal quotation marks omitted).[4]

When the prosecutor switches roles and assumes the defense—in the same case—we think different factors come into play. Other courts agree, holding such "changing-horses" representation presents a *per se* conflict of interest that warrants reversal regardless of an "actual" conflict or demonstrable prejudice to the defendant. In *People v. Kester*, 361 N.E.2d 569, 571–72 (Ill. 1977), the Illinois Supreme Court held that where the attorney representing the defendant at a negotiated-plea hearing was formerly an assistant state's

---

[4] The Supreme Court also noted in *Cuyler* that "[a]bsent special circumstances," courts can assume that multiple representation entails no conflict because they may reasonably "rely in large measure upon the good faith and good judgment of defense counsel. . . . [who] is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial." *Cuyler*, 446 U.S. at 346–47.

attorney and had made three appearances for the state of Illinois in the preliminary stages of the case (filing a motion for discovery and requesting a bench warrant for the defendant's nonappearance), a *per se* conflict of interest existed warranting a new trial—even in the absence of evidence that the attorney's representation of the defendant was in any way flawed. In so ruling, the court stated:

> [W]e believe that a potential conflict of interest . . . exists in a situation such as this when a prosecutor who personally has been involved in the prosecution of a defendant in a particular criminal proceeding later assumes the duties of . . . defense counsel for that defendant in the same proceeding. It is possible that . . . counsel's former association with the prosecution could inure to the benefit of the accused. But there is also the possibility that the attorney might be subject to subtle influences which could be viewed as adversely affecting his [or her] ability to defend his [or her] client in an independent and vigorous manner. It might be contended, for example, that the advice and performance of . . . counsel in such a situation was affected by a subliminal reluctance to attack pleadings or other actions and decisions by the prosecution which he [or she] may have been personally involved with or responsible for. . . . [And] it would be extremely difficult for an accused to show the extent to which this may have occurred. At the same time, a lawyer who may have provided an able and vigorous defense with complete loyalty to the defendant is placed in the difficult and unfortunate position of being subject to unfounded charges of unfaithful representation. The untenable situation which results for both the accused and his [or her] . . . attorney in such instances is one which can and should be avoided in

7

the interests of the sound administration of criminal justice.

*Id.* (citation omitted). And, responding to the argument—also suggested by the State in this case—that because the attorney's participation in the prosecution was "routine" and of a "highly formalistic" nature, no conflict of interest should be found, the court stated:

> [W]here counsel has repeatedly appeared on behalf of the State in the particular case in which he [or she] is now representing [the] defendant, we are not persuaded that inquiry into the precise nature and extent of his [or her] personal involvement is either necessary or desirable. While there has been no showing that, as assistant public defender, counsel did not represent the defendant in a competent and dedicated manner with complete loyalty to him, we conclude that a potential conflict was present, and . . . we hold that it was unnecessary for the defendant to show that actual prejudice resulted therefrom.

*Id.* at 572.

The Oklahoma Court of Criminal Appeals reached a similar result, reversing a burglary conviction on conflict-of-interest grounds where defense counsel had appeared as a county prosecutor for the state of Oklahoma at the defendant's arraignment and preliminary hearing. *Skelton v. State*, 672 P.2d 671 (Okla. Crim. App. 1983). Quoting an earlier case, the court stated:

> "The public has a right to absolute confidence in the integrity and impartiality of the administration of justice." We therefore reemphasize that, notwithstanding the willingness of a defendant to be represented by an attorney who is presumably

8

familiar with the State's case by virtue of having been the prosecutor, such a situation creates a pervasive atmosphere of impropriety which cannot be waived. Under no circumstances should such a situation be allowed to arise in the future.

*Id.* (quoted source omitted).[5]

Other courts have held that a defense counsel's affiliation with a prosecutorial agency was a disqualifying conflict of interest despite the absence of any involvement on counsel's part in the prosecution of the client. *See* Gregory G. Sarno, Annotation, *Circumstances Giving Rise to Prejudicial Conflict of Interests Between Criminal Defendant and Defense Counsel— State Cases*, 18 A.L.R. 4th 360, 487 (1982 & Supp. 1997).

There are cases to the contrary, but we are persuaded by the considerations outlined by the Illinois court in *Skelton* and in *State v. Sparkman*, 443 So. 2d 700 (La. Ct. App. 1983), where the Louisiana Court of Appeals, ruling that defense counsel who had acted in the case while employed as an assistant district attorney was *per se* disqualified, stated:

> There is no evidence whatsoever that the lawyer gained knowledge in confidence while serving the public as an assistant district attorney and now uses that knowledge to serve defendant as [his] lawyer. Nor is there any evidence that the lawyer's being hired as defendant's [ ]counsel is a reward for his having exercised his public authority in favor of defendant. But because of the possibility of either

[5] *See also State v. Sparkman*, 443 So. 2d 700 (La. Ct. App. 1983) (defendant's co-counsel, who, while previously employed as an assistant prosecutor, had reviewed defendant's case and authorized reduction of the charge, disqualified even in the absence of any evidence of actual conflict or impropriety).

> such betrayal of professional trust, the appearance
> of professional impropriety is present even if none
> exists.

*Id.* at 701 (citation omitted).

To us, the key concepts governing this case are "trust," "fairness" and "appearance." The judicial system is built on the trust and respect of the public and relies on that trust and respect for its effectiveness. Lord Hewart's frequently quoted remark of nearly seventy-five years ago is equally appropriate today: "It . . . is of fundamental importance that justice should not only be done, but should manifestly and undoubtedly be seen to be done."[6] *Rex v. Sussex Justices* (1924) 1 K.B 256, 259. Similarly, the United States Supreme Court has said that trials themselves are "a reflection of the notion, deeply rooted in the common law, that 'justice must satisfy the appearance of justice,' " *Levine v. United States*, 362 U.S. 610, 616 (1960) (quoted source omitted), and that the perception of fairness of trials and judicial acts is essential to the effectiveness of the system itself. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) (Brennan, J., concurring).[7]

---

[6] *See, e.g., United States v. White*, 846 F.2d 678, 696 (11th Cir. 1988); *La Rocca v. Lane*, 47 A.D.2d 243, 251 (N.Y. App. Div. 1975).

[7] The underlying principle is, of course, one of basic political theory: the legitimacy of any system for resolving disputes ultimately depends on the willingness of the parties to abide by the results—a willingness that will be undermined by procedures and results that are perceived as unfair. *See, e.g.*, David A. Harris, *The Appearance of Justice: Court TV, Conventional Television, and Public Understanding of the Criminal Justice System*, 35 ARIZ. L. REV. 785, 790 (1993); Patrick E. Longan,

In this situation, we think only a bright-line rule will adequately protect the important public and private interests at stake. We hold that where defense counsel has appeared for and represented the State as a prosecutor in prior proceedings in the same case in which he or she now represents the defendant, a conflict of interest exists warranting reversal even in the absence of evidence of actual conflict, or of prejudice to the defendant or the State. We emphasize, however, that our holding is a narrow one, confined to the facts of this case.

We therefore reverse the circuit court's order and remand for resentencing.

*By the Court.*—Order reversed and cause remanded.

---

*Civil Trial Reform and the Appearance of Fairness*, 79 Marq. L. Rev. 295, 298 (1995).