STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Michael LOVE, Defendant-Appellant.

Supreme Court

*No. 97–2336–CR. Oral argument February 23, 1999.—Decided June 23, 1999.*

(Also reported in 594 N.W.2d 806.)

For the plaintiff-respondent-petitioner the cause was argued by *Maureen McGlynn Flanagan,* assistant attorney general with whom on the brief was *James E. Doyle,* attorney general.

For the defendant-appellant there was a brief and oral argument by *Philip J. Brehm,* Janesville.

¶ 1. DAVID T. PROSSER, J. The State of Wisconsin (State) seeks review of a published decision of the court of appeals reversing a judgment of the Rock County Circuit Court, Edwin C. Dahlberg, Judge.[1] In 1994, the defendant, Michael Love (Love), was convicted of burglary. The court withheld sentence and

---

[1] *State v. Love,* 218 Wis. 2d 1, 579 N.W.2d 277 (Ct. App. 1998).

placed him on three years of probation. In 1995, Love was charged with new offenses leading to the revocation of his probation. When he was returned to court for sentencing on the original conviction, he was represented by a public defender who, while working as an assistant district attorney 20 months earlier, had represented the State at Love's original sentencing. The circuit court sentenced Love to ten years in prison.

¶ 2. Love filed a motion for post-conviction relief, claiming he was denied the effective assistance of counsel at the second sentencing because his defense attorney had previously represented the State in the same case. The circuit court denied the motion, finding that Love's attorney had done nothing improper. The court of appeals reversed, holding that the potential conflict of interest that exists when an attorney switches sides during a case requires resentencing without the defendant having to demonstrate either an actual conflict or prejudice. *State v. Love*, 218 Wis. 2d 1, 11, 579 N.W.2d 277 (Ct. App. 1998).

¶ 3. The issue presented is whether a defendant, who is represented at a sentencing hearing by an attorney previously involved in the prosecution of the same case, may raise a successful ineffective assistance of counsel claim in a post-conviction motion based on an alleged conflict of interest without any showing of actual conflict or prejudice. Because we believe this case is governed by the principles set out in *Cuyler v. Sullivan*, 446 U.S. 335, 346 (1980), and *State v. Kaye*, 106 Wis. 2d 1, 8–16, 315 N.W.2d 337 (1982), we reverse the decision of the court of appeals.

## FACTS

¶ 4. The central facts of this case are not in dispute. In January of 1994, Michael Love was charged

with one count of burglary and one count of misdemeanor theft. In September of 1994, a plea agreement was negotiated by Love's public defender, Jane Wagner, and Rock County Assistant District Attorney Gerald Urbik. Under the terms of the agreement, Love pled guilty to the burglary charge, the theft charge was dismissed, and the attorneys agreed jointly to recommend that Love be placed on three years of probation. Despite a presentence report which recommended that Love receive a five-year sentence to the Intensive Sanctions Program, the court accepted the attorneys' joint recommendation, withheld sentence, and placed Love on probation for three years.

¶ 5. From January 1994 to December 1994, several Rock County assistant district attorneys participated in the court proceedings involving Love's case. Brenna Lisowski (Lisowski), an assistant district attorney in the Rock County District Attorney's Office from June 1990 until March 1995, represented the State in two of these proceedings, after Love's guilty plea. On November 1, 1994, Lisowski made a brief appearance at a continuance hearing to allow a presentence report to be completed. On December 13, 1994, Lisowski appeared at the defendant's sentencing hearing and argued to implement the plea agreement. She said on the record at the time that she "was handed the file by the secretary about 15 minutes ago. . . ."

¶ 6. In 1995, while still on probation for the burglary conviction, Love was arrested for new charges of armed burglary and armed sexual assault. Because Love's sentence on the burglary conviction had been withheld, the new charges led to the revocation of his probation and then his reappearance before Judge Edwin C. Dahlberg, the original sentencing court. Ironically, Lisowski, who had left the district attorney's

office in March of 1995 to become an assistant public defender, was appointed to represent Love. At the second sentencing hearing, Love's probation agent and the assistant district attorney recommended a prison sentence of ten years. Lisowski urged the court to disregard the pending charges and impose a sentence of only five years. Based on Love's extensive criminal record,[2] the circuit court imposed the maximum sentence of ten years in prison, noting that Love had been given a break when he was originally given probation.

## PROCEDURAL HISTORY

¶ 7. Claiming ineffective assistance of counsel, Love later filed a motion for post-conviction relief requesting re-sentencing in the circuit court. Although he had never raised the issue at the time of his sentencing, Love now claimed he was denied the effective assistance of counsel because his defense attorney, Lisowski, had represented the State at his first sentencing hearing and then switched sides at his second sentencing hearing on the same charge. This, he claimed, was a violation of Supreme Court Rule 20:1.9.

¶ 8. The court held a post-conviction hearing on July 19, 1997. Lisowski testified that she had no independent recollection of ever having appeared on behalf of the State at the defendant's original sentencing in December of 1994. With the observation that several

---

[2] In addition to the burglary conviction and the later incident resulting in charges of armed burglary and armed sexual assault, Love was convicted and sentenced to three years in prison in 1987 for possession of a stolen vehicle and was also convicted of robbery in Illinois in 1990, for which he was sentenced to four years in prison. Love was also convicted of possession of a controlled substance and aiding and abetting a fugitive in 1974.

assistant district attorneys had appeared on behalf of the State at the various proceedings in the case,[3] the court accepted as true Lisowski's testimony that she did not recall her appearances on behalf of the State. The court concluded that Lisowski had done nothing improper and that there was no reason for resentencing.

¶ 9.    The court of appeals reversed and remanded in a published decision filed March 19, 1998. *Love*, 218 Wis. 2d 1. The court acknowledged that both federal and state courts have required that a defendant asserting a Sixth Amendment conflict of interest claim from multiple representation who did not raise the issue in a timely manner must prove that both an actual conflict of interest existed and that the attorney's performance was adversely affected by the conflict. *Id.* at 4–5 (citing *Cuyler*, 446 U.S. 335; *Kaye*, 106 Wis. 2d 1; *State v. Street*, 202 Wis. 2d 533, 551 N.W.2d 830 (Ct. App. 1996); *State v. Foster*, 152 Wis. 2d 386, 448 N.W.2d 298 (Ct. App. 1989)).

¶ 10.    However, the court distinguished *Cuyler, Kaye*, and their progeny as cases which involved simultaneous or earlier representation of a person related to the crimes with which the respective defendants were charged—*i.e.*, a co-defendant, a witness, or an investigator—whereas the present case involved an attorney who had switched sides from prosecution to defense in the same case. *See Love*, 218 Wis. 2d at 5. The court of appeals relied on cases from other jurisdictions which adopted a *per se* conflict of interest rule when an attor-

---

[3] According to the court, six different assistant district attorneys appeared at 14 different hearings in connection with Love's burglary case. Assistant District Attorney Gerald Urbik, who negotiated the plea agreement with Love's counsel, did not appear at any of the 14 hearings.

ney switches sides in a case. *People v. Kester*, 361 N.E.2d 569, 571–72 (Ill. 1977); *State v. Sparkman*, 443 So. 2d 700 (La. Ct. App. 1983); *Skelton v. State*, 672 P.2d 671 (Okla. Crim. App. 1983). The court fashioned a "bright line rule" for these limited circumstances, stating that when a defense attorney has appeared for and represented the State as a prosecutor in prior proceedings in the same case in which he or she is now representing the defendant, a conflict of interest exists which warrants reversal—even in the absence of actual conflict or prejudice to the defendant. *Love*, 218 Wis. 2d at 11.

¶ 11. Perceiving this case to be an important matter of first impression in Wisconsin, we accepted review.

## STANDARD OF REVIEW

■■■■

¶ 12. We begin by looking to the standards of review. On a claim of ineffective assistance of counsel, "An appellate court will not overturn a trial court's findings of fact concerning the circumstances of the case and the counsel's conduct and strategy unless the findings are clearly erroneous." *State v. Knight*, 168 Wis. 2d 509, 514 n.2, 484 N.W.2d 540 (1992). "However, whether counsel's performance was deficient and whether the deficient performance prejudiced the defense are questions of law which this court decides without deference to the court of appeals or the circuit court." *State v. Sanchez*, 201 Wis. 2d 219, 236–37, 548 N.W.2d 69 (1996). When the pertinent facts are not in dispute, whether the facts establish a constitutional violation is a question of law which an appellate court reviews *de novo. State v. Cobbs*, 221 Wis. 2d 101, 105, 584 N.W.2d 709 (1998); *Street*, 202 Wis. 2d at 543.

## ANALYSIS

¶ 13. In criminal cases, conflict of interest claims involving attorneys are treated analytically as a subspecies of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 691–92 (1984).

¶ 14. In *Cuyler v. Sullivan*, 446 U.S. 335 (1980), the United States Supreme Court set the current standard for analyzing ineffective assistance of counsel claims based on an attorney's potential conflict of interest. *Cuyler* involved two attorneys' multiple representation of three defendants charged with murder. In three separate trials, Sullivan was convicted, while his co-defendants were acquitted. *Id.* at 338. After his conviction, Sullivan alleged that he was denied the effective assistance of counsel because his attorneys represented conflicting interests. *Id.* The Court held that "the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 350. At least, "a defendant *who raised no objection at trial* must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348 (emphasis supplied).[4]

¶ 15. This court embraced the *Cuyler* standard in *State v. Kaye*, 106 Wis. 2d at 7, where one attorney

---

[4] The Court vacated the decision of the Third Circuit Court of Appeals which had stated that a criminal defendant is entitled to reversal of his conviction whenever he makes "some showing of a possible conflict of interest or prejudice, however remote. . . ." *State ex rel. Sullivan v. Cuyler*, 593 F.2d 512, 519 (3rd Cir. 1979) (quoting *Walker v. United States*, 422 F.2d 374, 375 (3rd Cir. 1970) (per curiam), *cert. denied*, 399 U.S. 915 (1970)).

represented two defendants in the same case. Kaye sought to be resentenced on grounds that due to a conflict of interest, his attorney could not make an argument that Kaye should receive a lighter sentence because he was less culpable than his co-defendant. The court rejected the claim, saying that more than a *potential* conflict of interest must be shown. *Id.* at 7–8.

¶ 16.  The court's discussion in *Kaye* wrestled with the question of how a defendant makes the proper showing of "an actual conflict of interest" on the part of his attorney. The test, as Justice Marshall noted in his *Cuyler* dissent, is somewhat ambiguous, but:

> Neither this court nor the United States Supreme Court has ever held that representation by one attorney of multiple defendants constitutes a per se violation of the right to counsel of the defendants. . . .This is true despite the fact that a potential conflict of interest inheres almost every time an attorney represents more than one defendant. This potential conflict is perhaps strongest at the sentencing stage. . . . In short, it is clear that a lawyer representing more than one defendant can almost always emphasize certain factors about one defendant in an effort to minimize his sentence. If his co-defendant does not possess these same factors, then a potential conflict of interest appears. *However, we have held that more than such a potential conflict of interest must be shown. (Emphasis supplied.)*

*Id.* at 7.
██

¶ 17.  The *Kaye* court set forth a standard: To establish that he was denied effective representation by counsel, a defendant must establish by clear and convincing evidence that an actual conflict of interest existed. It is not sufficient that he show that "a mere

possibility or suspicion of a conflict could arise under hypothetical circumstances." *Id.* at 8. However, the defendant does not have to show actual prejudice; once he shows an actual conflict he is entitled to relief. The fact that one attorney represents more than one defendant is not in itself a conflict of interest and the attorney is entitled to represent more than one defendant unless the interest of the defendants is shown to be in conflict. *Id.*

¶ 18. Then the court reconciled its prior rulings with the holding in *Cuyler*:

> We read *Cuyler v. Sullivan* as imposing a test very similar to the one adopted by this court. [*Cuyler*] requires proof that an "actual conflict of interest adversely affected his lawyer's performance." We do not interpret this language as meaning that a defendant must first show an actual conflict and then prove that some kind of specific adverse effect or harm resulted from this conflict. This would be logically inconsistent with the rule in [*Cuyler*] and previous supreme court cases that a defendant need not demonstrate prejudice in order to obtain relief. . . .The harm to a defendant necessarily follows once it has been demonstrated that his lawyer actively represented a conflicting interest. A defendant's constitutional right to the effective assistance of counsel certainly includes the guarantee that his counsel not proceed when there appears to be an actual conflict of interest. We think this is what the court meant in *Cuyler v. Sullivan*, when it wrote, "But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance."

*Id.* at 8–9 (citation omitted).

¶ 19. A number of Wisconsin decisions have applied the *Kaye* principles in different contexts. These cases include *State v. Owen*, 202 Wis. 2d 620, 551 N.W.2d 50 (Ct. App. 1996); *State v. Street*, 202 Wis. 2d 533, 551 N.W.2d 830 (Ct. App. 1996); *State v. Foster*, 152 Wis. 2d 386, 448 N.W.2d 298 (Ct. App. 1989); and *State v. Franklin*, 111 Wis. 2d 681, 331 N.W.2d 633 (Ct. App. 1983). But the rule remains "somewhat ambiguous" and deserves clarification.

¶ 20. In order to establish a Sixth Amendment violation on the basis of a conflict of interest, a defendant who did not raise an objection at trial must demonstrate by clear and convincing evidence that his or her counsel had an actual conflict of interest. Determining what constitutes an actual conflict of interest must be resolved by looking at the facts of the case. An actual conflict of interest exists when the defendant's attorney was actively representing a conflicting interest, so that the attorney's performance was adversely affected. Once an actual conflict of interest has been established, the defendant need not make a showing of prejudice because prejudice is presumed. Counsel is considered *per se* ineffective once an actual conflict of interest has been shown.

¶ 21. We conclude that, in a post-conviction motion when no timely objection was made, "actual conflict of interest" cannot be neatly separated from performance, for it is difficult to draw a line between potential conflict and actual conflict without pointing to some deficiency in the attorney's performance either in what was done or in what was not done.[5] Moreover,

---

[5] In *United States v. Ziegenhagen*, 890 F.2d 937, 939 (7th Cir. 1989), the court said that an actual conflict of interest means " 'that the defense attorney was required to make a choice advancing his own interests to the detriment of his cli-

71

it is not satisfactory to condemn relationships which are labeled as "actual conflicts of interest," then disregard them when they do not have any discernible effect on the case.

¶ 22. · Before trial, these problems can and should be avoided, as suggested in *Kaye*, by requiring circuit courts to conduct an inquiry whenever the same attorney or law firm represents more than one defendant in the same criminal case. We recognized in *Kaye* that when no objection is made at trial it is very difficult later to prove a conflict of interest by clear and convincing evidence from the record. *Kaye*, 106 Wis. 2d at 13–14. We therefore stated:

> To avoid such problems in the future, we will require trial courts to conduct an inquiry whenever the same attorney or law firm represents more than one defendant in the same criminal case. The court should inquire of the defendants and their attorney at the arraignment as to the possibility for actual conflicts of interest. The judge should ensure that

---

ent's interests,' *United States v. Horton*, 845 F.2d 1414, 1419 (7th Cir. 1988)." The attorney's choice could presumably advance any person's interest at the expense of the defendant and thereby create an actual conflict. The *Ziegenhagen* definition serves the useful purpose of suggesting choices that are happening or have happened in the past as opposed to choices that might happen in the future and thus are only potential choices.

In *People v. Spreitzer*, 525 N.E.2d 30, 36 (Ill. 1988), the Illinois Supreme Court expressed its understanding of the phrase "an actual conflict of interest adversely affected" counsel's performance. The court said, "What this means is that the defendant must point to some specific defect in his counsel's strategy, tactics, or decision making attributable to the conflict."

the defendants understand the potential conflicts and determine whether they want separate counsel. If the defendants insist on being represented by the same counsel after being fully advised of the potential problems, the trial judge should permit such multiple representation. However, this determination should not be made unless it is clear the defendants have made a voluntary and knowing waiver of their right to separate counsel.

*Id.* at 14.

¶ 23. The hearing directed in *Kaye* is also discussed in *State v. Miller*, 160 Wis. 2d 646, 467 N.W.2d 118 (1991), where the court approved a circuit court's disqualification of an attorney over the objection of the defendant because of a serious *potential* for conflict of interest. The standards to be applied in the *Kaye* hearing dealing with a potential or actual conflict of interest before trial, are different from the standards applied in a motion for relief after trial, because both the defendant and the court should be given the opportunity before trial to head off an actual conflict of interest before it happens.

¶ 24. This brings us to the case at hand. Love attempts to distinguish the *Cuyler-Kaye* line of cases from this one by categorizing them as instances of multiple representation, whereas this case involves serial representation. Serial representation occurs when an attorney represents one party in a case, then switches sides to represent the other party in the same proceeding or in an unrelated case.

¶ 25. While this court has not previously been faced with a serial representation conflict of interest claim, several federal courts have addressed the distinction between serial and multiple representation and have concluded that the *Cuyler* test should be

extended to conflict of interest cases involving serial representation. *Spreitzer v. Peters*, 114 F.3d 1435, 1450–52 (7th Cir. 1997); *Hernandez v. Johnson*, 108 F.3d 554, 559–60 (5th Cir. 1997); *Maiden v. Bunnell*, 35 F.3d 477, 480 (9th Cir. 1994); *cf. United States v. Carpenter*, 769 F.2d 258, 262 (5th Cir. 1985). *But see Beets v. Scott*, 65 F.3d 1258, 1265 (5th Cir. 1995), *cert. denied*, 517 U.S. 1157 (1996).

¶ 26. *Spreitzer* addressed the issue in considerable detail. A former prosecutor who was "very much involved" in the decision to charge Spreitzer with murder became an assistant public defender during Spreitzer's pretrial proceedings and ultimately Public Defender of DuPage County, Illinois, before Spreitzer's trial. In short, he became head of the office defending Spreitzer but was not otherwise involved in the case. The trial judge was always aware of the former prosecutor's involvement and there was no objection from Spreitzer until after the trial. The Illinois Supreme Court in *People v. Spreitzer*, 525 N.E.2d 30 (Ill. 1988), rejected Spreitzer's arguments that a conflict existed. In a collateral challenge in federal court, the court of appeals also rejected the argument, applying a *Cuyler* analysis. The court said:

> If. . .the defendant does not make a timely objection or the trial court is not otherwise apprised of the possible conflict, then the reviewing court will presume prejudice only if the defendant can show that "an actual conflict of interest adversely affected his lawyer's performance." *Cuyler*. . . .We believe that the judge was adequately informed of the nature of the conflict and correctly admonished that [the former prosecutor] could not be involved in the case. . .

*Spreitzer*, 114 F.3d at 1450–51. The record did not indicate that the former prosecutor was involved in Spreitzer's defense in any way other than in a titular capacity. *Id.* at 1452.

¶ 27.   A different result was reached in *United States v. Ziegenhagen*, 890 F.2d 937 (7th Cir. 1989). There, the Seventh Circuit remanded a case in which the defendant's attorney had participated in sentencing the defendant 20 years earlier and subsequently was involved in his defense when the government was trying to use the old offense as a prior conviction for sentence enhancement. While the defendant was told of his attorney's former role, the trial judge was not. The court said it was disturbed that the attorney could have informed the court of the potential conflict but had not done so. "An actual conflict of interest between retained counsel and a represented party requires an evidentiary hearing to determine whether or not the represented party made a knowing and intelligent waiver of the conflict." *Ziegenhagen*, 890 F.2d at 941.[6]

¶ 28.   In *Maiden*, the Fifth Circuit commented on *Ziegenhagen*:

> We agree that the prosecutor in *Ziegenhagen* labored under an actual conflict of interest, but hesitate to adopt the broader *per se* rule announced in that case. Although the possibilities for actual conflicts are very real when attorneys "switch sides" in a subsequent criminal case involving the same defendant, such conflicts do not automatically occur. Determining whether an attorney has an actual conflict involves a closer examination of the facts of each particular case, with a particular eye to whether the attorney will, in the present case, be

---

[6] *Ziegenhagen*, 890 F.2d 937, was not cited in *Spreitzer v. Peters*, 114 F.3d 1435 (7th Cir. 1997).

required to undermine, criticize, or attack his or her own work product from the previous case.

*Maiden*, 35 F.3d at 480–81.

¶ 29. Our court of appeals based its decision on a small group of cases from other jurisdictions which adopted a *per se* disqualification rule in the serial representation situation. *Love*, 218 Wis. 2d at 6–8. The court relied primarily on *People v. Kester*, 361 N.E.2d 569 (Ill. 1977), an Illinois case in which a court-appointed defense attorney had previously represented the State in the same criminal proceeding. The Illinois Supreme Court held that a potential conflict was present, and it was unnecessary for the defendant to show that actual prejudice resulted therefrom. The court said:

> [W]here counsel has repeatedly appeared on behalf of the State in the particular case in which he is now representing the defendant, we are not persuaded that inquiring into the precise nature and extent of his personal involvement is either necessary or desirable. While there has been no showing that, as assistant public defender, counsel did not represent the defendant in a competent and dedicated manner with complete loyalty to him, we conclude that a potential conflict was present, and. . .we hold that it was unnecessary for the defendant to show that actual prejudice resulted therefrom.

*Kester*, 361 N.E.2d at 572.

¶ 30. The Illinois Supreme Court's decision in *Kester* predates the United States Supreme Court's decision in *Cuyler* by three years. Since then, the Illinois Supreme Court itself has noted that this *per se*

approach is confusing.[7] *Spreitzer*, 525 N.E.2d at 34; *see also*, Robert C. Perry, *Conflict of Interest in Criminal Cases after Cuyler v. Sullivan: Time to Reconsider the Illinois Approach*, 14 J. Marshall L. Rev. 1 (1980). A recent interpretation of the Illinois rule has rejected the *per se* conflict of interest approach altogether. *Spreitzer v. Peters*, 114 F.3d at 1451.

¶ 31.    Another case relied upon by the court of appeals is *State v. Sparkman*, 443 So. 2d 700 (La. Ct. App. 1983). In that case, a Louisiana court held that where a defendant's attorney had previously represented the State as an assistant district attorney, there was a provision in the Louisiana Professional Responsibility Code which barred his employment by the defendant. *Sparkman*, 443 So. 2d at 701. The conflict was raised at the trial court level, but the trial court refused to disqualify the defendant's attorney.[8]

¶ 32.    Finally, the court of appeals cited an Oklahoma case, *Skelton v. State*, in support of its decision to create a *per se* disqualification rule. In *Skelton*, the court held that where an attorney represented the State at the arraignment and preliminary hearing and

---

[7] Noting that "[t]he term '*per se*' conflict does not appear in the United States Supreme Court case law, or for that matter, in cases from our sister jurisdictions," the Illinois Supreme Court stated that "[w]hat has been perhaps less clear. . .is when and under what circumstances conflicting interests will mandate the reversal of a conviction. This lack of clarity has partially stemmed from a confusing, and sometimes inconsistent, use of such terms as '*per se* conflict,' 'potential conflict,' 'possible conflict,' 'actual conflict,' 'prejudice,' and 'actual prejudice.' " *People v. Spreitzer*, 525 N.E.2d 30, 34 (Ill. 1988).

[8] Wisconsin case law clearly states that an attorney may be disqualified for a potential conflict of interest if the issue is raised in a timely manner. *See, e.g., Berg v. Marine Trust Co.*, 141 Wis. 2d 878, 892, 416 N.W.2d 643 (Ct. App. 1987).

then subsequently represented the defendant at trial in the same case, the situation created a pervasive atmosphere of impropriety that could not be waived. *Skelton*, 672 P.2d at 671.

¶ 33.    In each of these three cases, the time between the attorney's involvement as a prosecutor and the attorney's involvement for the defendant was much shorter than it was here. In addition, the attorney's involvement for the prosecution was more extensive than here, and the attorney was fully cognizant of the prior involvement. Conducting a preliminary examination for the State and then switching sides and handling the defendant's trial—within a short time frame—is quite different from supporting someone else's plea bargain and then advocating for the defendant 20 months later. In the present case, Lisowski made only two brief appearances for the State, was handed the case file a mere 15 minutes before the sentencing hearing, and could not remember her prior involvement at the second hearing.

¶ 34.    Love argues that important public policy considerations indicate we should not extend the *Cuyler* standard to cases of serial representation but instead should approve the *per se* rule adopted by the court of appeals. He contends that counsel's representation of both sides in the same criminal case will rarely be consistent with the sound administration of justice.

¶ 35.    The court of appeals was eloquent in its contention that the appearance of fairness of trials and judicial acts is essential to our system of justice.

¶ 36.    While we are sensitive to the appearance of professional impropriety described by the court, we are not persuaded that a *per se* rule is required to address this concern or to protect the other interests implicated

in serial representation. We are also not convinced that the bright line rule suggested by the court is so bright and self-evident that it could be limited to the particular facts of this case. For instance, suppose Gerald Urbik, the assistant district attorney who negotiated the plea agreement with Love's attorney, had switched sides and appeared for Love at his new sentencing hearing. The bright line rule, as stated, would not have applied to him because he never "appeared for and represented the State as a prosecutor in prior proceedings." Yet, his appearance would have been a far more obvious conflict than Lisowski's unwitting conflict. Moreover, the court's bright line rule does not provide guidance for those situations in which a defendant's attorney later becomes a prosecutor and faces the former client.

¶ 37. In extending *Cuyler-Kaye* standards to serial representation, we are bound to extend also the requirement that all potential conflicts of interest that result from an attorney switching sides be made known to the court as soon as feasible before trial so that the court can inform the affected parties and conduct an appropriate inquiry. When an attorney who has switched sides informs the defendant and informs the court of the potential conflict, the attorney will often realize that he or she cannot proceed under Supreme Court Rules 20:1.9[9] or 20:1.11.[10] When a former prosecutor enjoys the confidence of a defendant despite the

---

[9] SCR 20:1.9 (1997–98) provides:

A lawyer who had formerly represented a client in a matter shall not:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents in writing after consultation; or

potential conflict, the defendant's waiver should be formalized on the record so that it can be evaluated by the

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 [regarding confidentiality] would permit with respect to a client or when the information has become generally known.

[10] SCR 20:1.11 (1997–98) provides:

(a) Except as law may otherwise expressly permit, a lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency consents after consultation. No lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter unless:

(1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and

(2) written notice is promptly given to the appropriate government agency to enable it to ascertain compliance with the provisions of this rule.

(b) Except as law may otherwise expressly permit, a lawyer having information that the lawyer knows is confidential government information about a person acquired when the lawyer was a public officer or employee, may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person. A firm with which that lawyer is associated may undertake or continue representation in the matter only if the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom.

(c) Except as law may otherwise expressly permit, a lawyer serving as a public officer or employee shall not:

(1) participate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment, unless under applicable law no one is, or by lawful delegation may be, authorized to act in the lawyer's stead in the matter; or

(2) negotiate for private employment with any person who is involved as a party or as attorney for a party in a matter in which the lawyer is participating personally and substantially.

(d) As used in this rule, the term "matter" includes:

court and so that it will not later serve as a basis for post-conviction relief.

¶ 38.   In all these situations, the court must be empowered to disqualify attorneys in the interest of justice. In *State v. Miller*, 160 Wis. 2d at 653, this court stated that "An actual conflict or serious potential for conflict of interest imperils the accused's right to adequate representation and jeopardizes the integrity of the adversarial trial process and the prospect of a fair trial with a just, reliable result." The court reiterated three institutional interests enumerated in *Wheat v. United States*, 486 U.S. 153 (1988), when a criminal defense attorney has an actual or serious potential conflict of interest.

> First, a court's institutional interest in ensuring that "criminal trials are conducted within the ethical standards of the profession." *Wheat*, 486 U.S. at 160. Second, a court's institutional interest in ensuring that "legal proceedings appear fair to all who observe them." *Id.* Third, a court's institutional interest that the court's "judgments remain intact on appeal" and be free from future attacks over the

---

(1)   any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest or other particular matter involving a specific party or parties; and

(2)   any other matter covered by the conflict of interest rules of the appropriate government agency.

(e)   As used in this rule, the term "confidential government information" means information which has been obtained under governmental authority and which, at the time this Rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose, and which is not otherwise available to the public.

81

> adequacy of the waiver or fairness of the proceedings. *Id.* at 161.

*Miller*, 160 Wis. 2d at 653 n.2.

¶ 39. In a post-conviction motion, the institutional factors are different. If a defendant has received a fair trial, the court has an institutional interest in protecting the finality of its judgment. Moreover, theoretical imperfections and potential problems ought not be treated more seriously than real deficiencies and real problems, for such skewed values would undermine public confidence in the administration of justice.

■

¶ 40. We hold that in order to establish a Sixth Amendment violation on the basis of a conflict of interest in a serial representation case, a defendant who did not raise an objection at trial must demonstrate by clear and convincing evidence that his or her counsel converted a potential conflict of interest into an actual conflict of interest by (1) knowingly failing to disclose to the defendant or the circuit court before trial the attorney's former prosecution of the defendant, or (2) representing the defendant in a manner that adversely affected the defendant's interests. If either of these factors can be shown, the circuit court should provide the defendant with appropriate relief. If an attorney knowingly fails to disclose to a defendant or the circuit court his or her former role in prosecuting the defendant, the attorney is subject to discipline from the Board of Attorneys Professional Responsibility.

¶ 41. In this case, the circuit court could have disqualified Lisowski *before* the sentencing hearing at the request of the defendant, at the request of the State, or on its own motion. But no one raised objection before sentencing; and the court, after a hearing, concluded that Lisowski did not remember her appearance

at Love's first sentencing and thus could not have intentionally withheld information about her prior involvement from Love. Love concedes that Lisowski's performance was not deficient and that she represented Love as effectively as she could have under the difficult circumstances he created.

¶ 42.    Counsel for defendant, in this well argued case, points to a statement Lisowski made at the first sentencing hearing on December 13, 1994. Lisowski said then:

> I think Ms. Wagner has set forth the reasons why the court can in good conscience adopt the recommendation of the parties. Despite the history, the only other thing that I would add along the same line of the manner over his head, to which Ms. Wagner referred, *I think the defendant has to know here and now, in court, that if this court does follow the recommendation of the parties, and he is not successful on Probation, given his history, I don't think the court is going to have any choice but to send the defendant to prison, and send the defendant to prison for ten years*, should he not comply with Probation and be successful while on Probation. (Emphasis supplied.)

¶ 43.    Had this statement come up at the defendant's second sentencing hearing, August 19, 1996, he could have argued successfully that his attorney's prior involvement in this case had irreparably compromised her representation of him. But Lisowski's statement did not come up. It was not used against the defendant. In fact, the transcript of the first sentencing hearing was not prepared until almost three months after the second sentencing hearing.

¶ 44.    We conclude that the defendant has not established a violation of his Sixth Amendment right to

effective assistance of counsel. Consequently, the decision of the court of appeals is reversed.

*By the Court.*—The decision of the court of appeals is reversed.