**COURT OF APPEALS
DECISION
DATED AND FILED**

**May 29, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP954-CR**

Cir. Ct. No. **2014CF3513**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ROBERT L. DORGAY,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: ELLEN R. BROSTROM, Judge. *Affirmed*.

Before White, C.J., Geenen and Colón, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Robert L. Dorgay, *pro se*, appeals from the judgment of conviction and the circuit court's order denying his motion for

postconviction relief. Dorgay argues that the prosecutor engaged in misconduct and that his trial attorney was constitutionally ineffective for various reasons, including that his attorney labored under an actual conflict of interest. Dorgay also seeks a new trial in the interest of justice. We reject Dorgay's arguments and affirm.

## BACKGROUND

¶2      After a trial in late July 2016, a jury found Dorgay guilty of strangulation and suffocation, battery, intimidation of a victim, false imprisonment, and second-degree sexual assault with the use of force, all arising out of a violent altercation with his then-girlfriend, Amber, in a hotel room in Milwaukee between July 30-31, 2014.[1] Each charge carried a domestic abuse enhancer. Dorgay struck, choked, and restrained Amber, and forced her to write a letter to his probation agent recanting her previous report to police that Dorgay beat her on a camping trip in Tomahawk, Wisconsin, the weekend prior to the altercation in the Milwaukee hotel.[2] After Amber wrote the letter, Dorgay sexually assaulted her. The circuit court sentenced Dorgay to fifteen years of initial confinement and fifteen years of extended supervision.

¶3      Dorgay filed a *pro se* WIS. STAT. RULE 809.30 motion for a new trial raising most of the same claims he now presents on appeal. The circuit court denied the motion in a written decision without a hearing, and it denied a subsequent motion

---

[1] We use the pseudonym "Amber" to refer to the victim in this case. *See* WIS. STAT. RULE 809.86 (2021-22).

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] At the time, Dorgay was on probation for an unrelated prior criminal conviction. While the fact of probation is relevant to our analysis herein, the prior conviction is not.

for reconsideration. Dorgay appeals from the judgment and order. Additional relevant facts will be discussed below.

## DISCUSSION

¶4     Dorgay raises four issues on appeal: (1) prosecutorial misconduct; (2) the denial of trial counsel's motion to withdraw; (3) ineffective assistance of counsel; and (4) our discretionary authority to order a new trial in the interest of justice. We reject each of Dorgay's arguments.

### I.     Prosecutorial Misconduct

¶5     On the morning before the second day of trial, Dorgay had an appointment with his probation agent, Chad Schepp. Earlier that morning, the prosecutor had lost contact with Amber and was investigating her whereabouts. By the time Dorgay arrived at Agent Schepp's office for his appointment, the prosecutor had learned from Amber's boyfriend that she was at work. The prosecutor stated that at the same time, Agent Schepp was contacting her to let her know that Dorgay was in his office early for his 8:00 a.m. appointment. The prosecutor told Agent Schepp that she had sent an officer to Amber's place of employment to pick her up and bring her to court, and asked Agent Schepp to stall Dorgay and delay his appointment that morning until she and police confirmed Amber's whereabouts. Agent Schepp did not begin the scheduled appointment with Dorgay on time. Dorgay initially waited but, within the hour, left Agent Schepp's office. Shortly thereafter, Agent Schepp received an email alert that the strap on the GPS monitor Dorgay wore had been tampered with. The monitor was later found

in a cemetery. Dorgay never returned and was tried in absentia from the second day through the end of the trial.[3]

¶6      Dorgay argues that the prosecutor's request to Agent Schepp to stall him constituted an unlawful detention and amounts to prosecutorial misconduct. If the prosecutor engages in "misconduct" that "'poisons the entire atmosphere of the trial,' it violates due process" and warrants a new trial unless the misconduct was harmless beyond a reasonable doubt. *State v. Lettice*, 205 Wis. 2d 347, 352, 556 N.W.2d 376 (Ct. App. 1996) (citation omitted). An error is harmless if there is no "reasonable possibility" that the error "contributed to the conviction." *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985).

¶7      Whether the prosecutor engaged in misconduct and whether such conduct requires a new trial is generally within the circuit court's discretion. *Lettice*, 205 Wis. 2d at 352. "An appellate court will sustain a discretionary act if the [circuit] court examined the relevant facts, applied a proper standard of law, and used a rational process to reach a conclusion that a reasonable judge could reach." *Id.* (citation omitted). However, whether a constitutional error is harmless is a question of law that we review de novo. *State v. Beamon*, 2011 WI App 131, ¶7, 336 Wis. 2d 438, 804 N.W.2d 706.

¶8      Dorgay argues that he was subject to an unlawful seizure ordered by the prosecutor. Although the circuit court correctly pointed out that Dorgay was not "actually arrested, handcuffed, [or] put in a nonpublic area," a seizure may also occur by a show of authority, e.g., when an officer's words and actions objectively

---

[3] It is unclear in the record when Dorgay returned to participate in the criminal proceedings, but we observe that Dorgay was present for an adjourned hearing on September 23, 2016, and his sentencing hearing on November 21, 2016.

convey to a reasonable person that they are not free to leave. *See, e.g.*, ***State v. Washington***, 2005 WI App 123, ¶¶12-14, 284 Wis. 2d 456, 700 N.W.2d 305. In order to show this type of seizure, the defendant must have actually yielded to the show of authority. *See **id.***, ¶¶13-14.

¶9 In his motion for postconviction relief and on appeal, Dorgay avers that he made contact with Agent Schepp while he was waiting in Agent Schepp's office. Dorgay claims that he told Agent Schepp he was concerned about being late for trial, and Agent Schepp responded, "You are not going anywhere right now, I am dealing with an emergency, I called the courts, they know you are going to be late, and if you leave, you will be arrested and revoked[.]" Initially, Dorgay waited, but he argues in his brief that while waiting, he overheard an agent telling other agents that the prosecutor wanted Dorgay taken into custody. Dorgay claims that a group of officers and probation agents who had previously assaulted Dorgay had been sent to take him into custody, and this triggered his post-traumatic stress disorder (PTSD), causing him to flee.

¶10 Dorgay's argument fails because he does not explain how his alleged unlawful seizure caused him to abscond from trial. Dorgay appears to argue that after he learned that the prosecutor was attempting to have him unlawfully detained, he had a mental breakdown causing him to abscond from trial. Critically, however, Dorgay presents no facts or evidence that his PTSD or any other condition caused or even influenced his decision to abscond. There was no medical evidence presented to support Dorgay's argument, and more fundamentally, there was no evidence presented or allegations made in Dorgay's postconviction motion that Dorgay overheard anything at Agent Schepp's office, let alone a nefarious scheme by the prosecutor to have Dorgay unlawfully detained by officers that had previously assaulted him. As the circuit court correctly summarized, Dorgay's

5

decision "to flee his trial was *his own*. The State is not responsible for that." We also observe that Dorgay's decision not to return for the duration of his trial was likewise his own, and not attributable to the State.

¶11     Dorgay also argues that the prosecutor engaged in misconduct during her opening statement and closing argument by commenting negatively on Dorgay's absence and arguing that the jury should infer his absence as consciousness of guilt. The circuit court deemed the argument forfeited because defense counsel did not contemporaneously object to the prosecutor's remarks, although it observed that defense counsel did effectively counter the prosecutor's argument with his own argument, (i.e., that the jurors should decide their verdict only on the evidence and not speculate as to why Dorgay was not present). We agree that the issue is forfeited. *See State v. Huebner*, 2000 WI 59, ¶¶10-11 & n.2, 235 Wis. 2d 486, 611 N.W.2d 727. Nonetheless, as we have explained, Dorgay, not the State, was responsible for Dorgay's absence at trial, and it is well settled that flight can be considered by the jury as consciousness of guilt. *Gauthier v. State*, 28 Wis. 2d 412, 419-20, 137 N.W.2d 101 (1965); *State v. Knighten*, 212 Wis. 2d 833, 839-40, 569 N.W.2d 770 (Ct. App. 1997).

¶12     Accordingly, we conclude that Dorgay, not prosecutorial misconduct, caused the alleged prejudice of which Dorgay complains, and thus, we affirm the denial of Dorgay's motion for a new trial premised on prosecutorial misconduct.

## II.     Conflict of Interest

¶13     On the morning before the first day of trial, Dorgay's trial counsel, Nathan Opland-Dobs, moved to withdraw. Although Dorgay complained generally of a lack of communication between him and Attorney Opland-Dobs and that Attorney Opland-Dobs was not investigating parts of the case that Dorgay viewed

as important, the basis for Attorney Opland-Dobs's motion to withdraw was a potential conflict of interest created by Dorgay's filing of a complaint against Attorney Opland-Dobs with the Office of Lawyer Regulation (OLR). Attorney Opland-Dobs specifically stated that he had no issues communicating with Dorgay and that he was prepared for trial, but he questioned whether the OLR complaint created an irreconcilable conflict.

¶14     The record reflects that before Attorney Opland-Dobs was appointed, Dorgay had three other attorneys. Dorgay complained to the supervisor of his first attorney and was assigned a new one. Dorgay's second attorney moved to withdraw due to a breakdown in the relationship, and the motion was granted. Dorgay filed an OLR complaint against his third attorney, the attorney moved to withdraw, and the motion was granted.

¶15     The circuit court denied Attorney Opland-Dobs's motion to withdraw, concluding that Dorgay's OLR complaint against Attorney Opland-Dobs did not create an irreconcilable conflict and that "this effort on Mr. Dorgay's behalf is an effort that is dilatory and designed to thwart the timely administration of justice in these cases." Postconviction, the circuit court deemed Dorgay's "right to conflict-free counsel" argument as "insufficient to warrant relief" and declined to revisit its finding that no conflict existed.

¶16     The United States and Wisconsin Constitutions guarantee criminal defendants the right to the effective assistance of counsel, and that right includes representation that is "free from conflicts of interest." *State v. Street*, 202 Wis. 2d 533, 541, 551 N.W.2d 830 (Ct. App. 1996). We review the denial of a motion to withdraw and substitute counsel for an erroneous exercise of discretion while considering a number of factors, including:

> (1) the adequacy of the court's inquiry into the defendant's complaint; (2) the timeliness of the motion; and (3) whether the alleged conflict between the defendant and the attorney was so great that it likely resulted in a total lack of communication that prevented an adequate defense and frustrated a fair presentation of the case.

*State v. Jones*, 2010 WI 72, ¶25, 326 Wis. 2d 380, 797 N.W.2d 378 (quoting *State v. Lomax*, 146 Wis. 2d 356, 359, 432 N.W.2d 89 (1988)).[4]  "A discretionary determination 'must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination.'"  *Lomax*, 146 Wis. 2d at 359 (citation omitted).

¶17     Here, the circuit court made an adequate inquiry into the bases of the motion:  Attorney Opland-Dobs was solely concerned with the effect of Dorgay's OLR complaint, while Dorgay complained of a breakdown in communication and differences of opinion with respect to pretrial investigation efforts and trial strategy. The motion was made the morning of trial, and after considering Dorgay's history with three previously appointed attorneys, the circuit court found that Dorgay's request was made for the purpose of delaying trial.  *See id.* at 361-62 ("Eleventh-hour requests are generally frowned upon as a mere tactic to delay the trial.").

---

[4]  The State argues that we should apply cases that ask, after the trial has already occurred, whether a pretrial *potential* conflict developed into an *actual* conflict during the course of the trial. *See, e.g.*, *State v. Love*, 227 Wis. 2d 60, 594 N.W.2d 806 (1999); *State v. Kaye*, 106 Wis. 2d 1, 315 N.W.2d 337 (1982); *State v. Medina*, 2006 WI App 76, 292 Wis. 2d 453, 713 N.W.2d 172.  We decline to do so, as those cases apply when the defendant raises the issue of the conflict for the first time postconviction.  *State v. Henyard*, 2020 WI App 51, ¶16, 393 Wis. 2d 727, 948 N.W.2d 396. Here, Attorney Opland-Dobs and Dorgay both preserved the issue of Attorney Opland-Dobs's substitution.

We observe, however, that the trial record reveals no basis for concluding that Attorney Opland-Dobs did, in fact, labor under a conflict of interest during trial.

Finally, the circuit court concluded that the OLR complaint, by itself, did not mandate Attorney Opland-Dobs's withdrawal, and because Attorney Opland-Dobs was otherwise prepared for trial and did not agree with Dorgay's account of a breakdown in communication, it denied the motion to withdraw.[5]

¶18 In our view, the circuit court considered the proper factors in relation to the facts of record and reached a reasoned and reasonable conclusion. *Id.* at 359. Accordingly, we conclude that the circuit court acted within its discretion in denying the motion to withdraw and substitute counsel.

### III. Ineffective Assistance of Counsel

¶19 In rejecting Dorgay's ineffective assistance challenges without a hearing, the circuit court applied the two-pronged test for deficient performance and prejudice established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "When a circuit court summarily denies a postconviction motion alleging ineffective assistance of counsel without holding a *Machner*[6] hearing, the issue for the court of appeals ... is whether the defendant's motion alleged sufficient facts entitling [the defendant] to a hearing." *State v. Sholar*, 2018 WI 53, ¶51, 381 Wis.

---

[5] Dorgay has not pointed to, the circuit court did not find, and we have not located, any Wisconsin case law directly pertinent to whether the filing of an OLR complaint against a defense attorney creates an irreconcilable conflict of interest. However, we are guided by and agree with the position set forth in a directly relevant Formal Ethics Opinion by the Professional Ethics Committee of the Wisconsin State Bar, *Wisconsin Formal Ethics Opinion EF-20-01: Responsibilities of a Lawyer when a Grievance is filed against the Lawyer*, (2020) https://www.wisbar.org/formembers/ethics/Ethics%20Opinions/EF-20-01%20Responsibilities%20when%20a%20Grievance%20is%20filed.pdf.

In sum, the opinion concludes that the fact that a client has filed a grievance against a lawyer who is currently representing the client does not, by itself, create a conflict that requires the lawyer to withdraw from the matter or seek the informed consent of the client to continue the representation, though it may be a basis for permissive withdrawal.

[6] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

2d 560, 912 N.W.2d 89.  However, even if the motion alleges specific facts, "an evidentiary hearing is not mandatory if a defendant's motion presents only conclusory allegations or if the record as a whole conclusively demonstrates that the defendant is not entitled to relief." *State v. Ruffin*, 2022 WI 34, ¶38, 401 Wis. 2d 619, 974 N.W.2d 432.

¶20     To establish deficient performance, the motion must specifically allege more than that counsel's performance was "imperfect or less than ideal." *State v. Balliette*, 2011 WI 79, ¶22, 336 Wis. 2d 358, 805 N.W.2d 334.  There is a strong presumption that counsel performed reasonably, and the question is "whether the attorney's performance was reasonably effective considering all the circumstances." *Id.*, ¶¶22, 25-28.

¶21     The motion must also allege prejudice, i.e., "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  In order to satisfy this prong, the defendant must allege more than "that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.  "[R]ank speculation" is insufficient. *State v. Erickson*, 227 Wis. 2d 758, 774, 596 N.W.2d 749 (1999).

¶22     Many of Dorgay's complaints relate to trial counsel's failure either to object to the admission of evidence or to introduce certain evidence.  The decision whether to admit or exclude evidence is addressed to the circuit court's sound discretion. *State v. Gutierrez*, 2020 WI 52, ¶17, 391 Wis. 2d 799, 943 N.W.2d 870.  "An appellate court upholds a circuit court's exercise of discretion to admit or exclude evidence where it 'examined the relevant facts, applied a proper legal

standard, and, using a demonstrated rational process, reached a reasonable conclusion.'" ***Id.***, ¶21 (citation omitted). We "look for reasons to sustain [the] [circuit] court's discretionary decision." ***Id.***, ¶27 (citation omitted).

¶23 Whether a postconviction motion is sufficient on its face to require an evidentiary hearing and whether the record conclusively demonstrates that the defendant is not entitled to relief are both questions of law that we review independently of the circuit court while benefiting from its analysis. ***Ruffin***, 401 Wis. 2d 619, ¶27; ***Balliette***, 336 Wis. 2d 358, ¶18.

### a. Evidence of Dorgay's threat to injure victim and third party

¶24 Dorgay's first claim is that trial counsel was ineffective for failing to timely object to testimony about threats Dorgay made, and for failing to argue that testimony about Dorgay's threats directed at a person who did not testify violated his rights under the confrontation clause. In August 2015, Dorgay was arrested and charged in a separate case with bail jumping and resisting an officer; all charges were joined for the July 2016 trial. As the factual basis for the charges, the State alleged that on August 25, 2015, Dorgay called his former business partner, Tom H., and threatened to shoot both Tom H. and Amber. At that time, Dorgay was on probation, and when his probation agent and police went to Dorgay's residence the next day to arrest him, Dorgay resisted. The State sought to introduce evidence of these threats to explain why police went to arrest Dorgay. Defense counsel objected to any evidence of a threat against Tom H., and the prosecutor agreed to elicit testimony to the effect only that police had a valid arrest warrant for Dorgay.

¶25 At trial, Milwaukee Police Officer Danilo Cardenas testified that Dorgay called Amber in August 2015 and offered her a large sum of money "to make this all go away." He then added that Dorgay threatened to put "a bullet" in

someone else. The prosecutor immediately stopped him, defense counsel objected, and the circuit court ordered the "bullet" comment stricken and instructed the jury to disregard it. However, the circuit court allowed Officer Cardenas's testimony about Dorgay's threat to Amber as relevant to why police went to arrest Dorgay on August 26, 2015.

¶26 Dorgay's probation agent at the time of this arrest, Paul Reif, testified that he received a report of a threat by Dorgay and was involved in his arrest. He explained that there were two threats, one of which was related to Amber. Reif testified that he went with police to arrest Dorgay on a warrant, and Dorgay resisted. The jury acquitted Dorgay of the bail jumping and resisting arrest charges.

¶27 Dorgay argues that his attorney's objection to Officer Cardenas's "bullet" comment came too late and that counsel also should have argued that Dorgay was denied the right to confront Tom H. Dorgay's argument fails to sufficiently allege either deficient performance or prejudice.

¶28 First, Dorgay's trial counsel did not perform deficiently because he filed a successful motion in limine to prohibit the State from referring to threats against Tom H., and, when Officer Cardenas gave testimony referring to that threat, counsel objected, causing the court to instruct the jury to disregard Officer Cardenas's comment. Juries are presumed to follow limiting instructions. *State v. Dorsey*, 2018 WI 10, ¶55, 379 Wis. 2d 386, 906 N.W.2d 158. Additionally, counsel did not perform deficiently for failing to raise a confrontation challenge because no out-of-court statements of Tom H. were admitted into evidence, testimonial or otherwise. *See Crawford v. Washington*, 541 U.S. 36, 53-59 (2004). Counsel does not perform deficiently for failing to raise meritless arguments and objections. *State v. Sanders*, 2018 WI 51, ¶29, 381 Wis. 2d 522, 912 N.W.2d 16.

¶29    Second, Dorgay could not have been prejudiced because Dorgay was acquitted of the only two offenses to which the threats against Amber and Tom H. were directly related: bail jumping and resisting arrest. Dorgay does not explain how or if the threats prejudiced his defense as to the other charges on which he was convicted, and as a result, we reject this basis for relief.

### b. Counsel's failure to introduce evidence that the victim wanted to move in with him

¶30    Dorgay's second ineffectiveness claim is that counsel should have introduced letters and text messages that he claims would show that he and Amber planned to move in together, the plans fell through, and she got angry. This, he says, would have supported his defense that Amber fabricated her allegations against him because he refused to continue a romantic relationship with her.

¶31    We first observe that Dorgay fails to explain how the letters and text messages would have been admissible given that a witness generally cannot be impeached with extrinsic evidence on collateral matters. WIS. STAT. § 906.08(2) (2015-16); *State v. Sonnenberg*, 117 Wis. 2d 159, 175, 344 N.W.2d 95 (1984). Moreover, the circuit court correctly held that the proffered letters and texts did not show any "plans" for Amber and Dorgay to move in together. They showed only that Amber expressed an interest in moving in with Dorgay but realized that such an arrangement would not work out. Amber also admitted at trial that she still had feelings for Dorgay after the incident in Tomahawk, was concerned for Dorgay's well-being, and felt somewhat guilty when she learned that Dorgay had found out that she reported him. Thus, even if the letters and text messages had been admitted, they would have amounted to cumulative evidence attacking Amber's credibility. *State v. McAlister*, 2018 WI 34, ¶39, 380 Wis. 2d 684, 911 N.W.2d 77 ("Where the credibility of a prosecution witness was tested at trial, evidence that again attacks

the credibility of that witness is cumulative.").[7]  Because Dorgay failed to make a sufficient showing of both deficient performance and prejudice, we reject this basis for relief.

### c. Failure to present evidence that the victim had a key to the hotel room

¶32    Dorgay's third ineffectiveness argument is that counsel should have offered evidence that Amber had a key to the hotel room to defend against the false imprisonment charge.  That counsel did not offer such evidence was not deficient performance or prejudicial.  Dorgay does not explain how a key to the hotel room would have helped Amber *leave* the hotel room, and trial counsel thoroughly challenged on cross-examination and closing argument Amber's testimony that she was not free to leave the room.  Accordingly, we reject this basis for relief.

### d. Trial counsel's performance regarding evidence of the Tomahawk assault

¶33    Dorgay's fourth argument is that counsel was ineffective for failing to object to the admission of other-acts evidence of the Tomahawk assault.  Further, Dorgay argues that counsel did not object to the State's breach of a stipulation to limit references to it.  We agree with the State and the postconviction court that the limited references to the Tomahawk incident were admissible as other-acts evidence under WIS. STAT. § 904.04(2) (2015-16).

---

[7] Relatedly, Dorgay argues that trial counsel should have introduced phone records showing that Amber called him a number of times after the Tomahawk assault.  Dorgay did not make this argument in his postconviction motion, and he has therefore forfeited the issue.  *State v. Huebner*, 2000 WI 59, ¶¶10-11 & n.2, 235 Wis. 2d 486, 611 N.W.2d 727.  Forfeiture aside, counsel's failure to introduce the phone records was not deficient performance or prejudicial because Amber admitted to contacting Dorgay a number of times after the Tomahawk incident. The phone records would have been cumulative.

¶34    In deciding whether "other-acts" evidence is admissible under WIS. STAT. § 904.04(2) (2015-16), we apply the three-step analytical framework adopted in *State v. Sullivan*, 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998). We first determine whether the other-acts evidence is offered for a permissible purpose under § 904.04(2) (2015-16). *Sullivan*, 216 Wis. 2d at 772. The State's burden to prove a permissible purpose is "hardly demanding." *State v. Payano*, 2009 WI 86, ¶63, 320 Wis. 2d 348, 768 N.W.2d 832 (citation and emphasis omitted). We then determine whether the other-acts evidence is relevant to proving those permissible purposes, i.e., whether the evidence "relates to a fact or proposition that is of consequence to the determination of the action." *Sullivan*, 216 Wis. 2d at 772. Finally, we determine whether the probative value of the other-acts evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, waste of time, or other similar concerns. *Id.*, at 772-73. If the analysis reaches this final stage, the burden is on the defendant to show that the probative value of the other-acts evidence is substantially outweighed by unfair prejudice. *State v. Hurley*, 2015 WI 35, ¶58, 361 Wis. 2d 529, 861 N.W.2d 174.

¶35    Here, other-acts evidence of the Tomahawk incident was offered for several permissible purposes, namely, to prove Dorgay's motive, intent, plan, and preparation to assault Amber in the Milwaukee hotel a few days later because she would not recant her report of the Tomahawk incident. As the State put it, "[t]he hotel incident does not happen without the Tomahawk incident." The probative value of the evidence for these permissible purposes was high, and Dorgay fails to sufficiently allege that this probative value is substantially outweighed by the danger of unfair prejudice.

¶36    Moreover, the references to the Tomahawk incident were vague, reducing the potential for unfair prejudice. On direct examination, Dorgay's close

15

friend and then-potential business partner, Brian Kelly, testified for the defense. Kelly testified that he flew into Milwaukee on July 30, 2014 and found himself in the Milwaukee hotel room with Dorgay and Amber. He denied discussing a recantation letter with Amber, testifying that he told Amber to "tell the truth." After leaving the hotel room to smoke a cigarette, Kelly testified that he was asked to bring paper from Amber's car up to the room. Kelly retrieved the paper and left it by the door but did not enter the room. Kelly later returned to the room where he was given Amber's recantation letter.

¶37 At first, Kelly claimed that he did not know the specifics about what happened in Tomahawk and that he, Dorgay, and Amber met at the hotel only because Amber wanted to spend the night with Dorgay. Kelly's denial that he knew any specifics of the Tomahawk incident opened the door to limited questions challenging that testimony, and Kelly later admitted on cross-examination that he asked Dorgay about what happened in Tomahawk, and Dorgay told him. The circuit court properly instructed the jury to consider this evidence only on the issues of motive, preparation, plan, or context. Cautionary jury instructions limiting the use of other-acts evidence help ensure that jurors consider the other-acts evidence only for a proper purpose, and jurors are presumed to follow those limiting instructions. *Dorsey*, 379 Wis. 2d 386, ¶55; *State v. Missouri*, 2006 WI App 74, ¶19, 291 Wis. 2d 466, 714 N.W.2d 595. Accordingly, we reject this basis for relief.[8]

---

[8] Dorgay appears to argue that trial counsel was ineffective for not introducing *more* evidence of the Tomahawk incident, presumably *after* the State elicited limited testimony of the incident from Brian Kelly. Dorgay does not explain how the failure to introduce more evidence of the Tomahawk incident prejudiced his defense, and this strategy's potential to backfire was enormous. It was not deficient performance or prejudicial for trial counsel to keep the door to the more violent details of the Tomahawk incident closed.

### e. Counsel's failure to object to photographs of the victim's injuries

¶38     Dorgay's fifth argument is that trial counsel was ineffective because he did not point out that photographs of Amber's injuries taken by Milwaukee police after the hotel incident showed the same injuries that appeared in photographs taken by Oak Creek police the day after the Tomahawk incident, before the hotel incident.

¶39     Dorgay has not shown deficient performance or prejudice by the admission of the photos. Several officers testified to observing new injuries when they saw Amber on July 31, 2014, after she called for help from the hotel room. The photographs introduced at trial taken after the hotel incident, when compared with the photographs taken after the Tomahawk incident, reflect what appear to be new injuries to Amber's eye and chin, and to the extent both sets of photographs depict injuries in the same place, the injuries in the photographs taken after the hotel incident are noticeably more severe than the photographs taken after the Tomahawk incident. The State also introduced expert testimony that strangulation injuries in general may not always be obvious, but the injuries reflected in the photographs were consistent with Amber's version of events. We reject this basis for relief.[9]

---

Dorgay also argues that trial counsel should have objected to a few references to Dorgay's probationary status. We disagree because, as the State points out, evidence that Dorgay was on probation and had a probation officer was unavoidable. The evidence showed that Dorgay forced Amber to draft the recantation letter so that he could send it to his probation agent, and he did in fact send the letter to his probation officer on July 31, 2014. The evidence of Dorgay's probationary status was relevant, highly probative, and not unfairly prejudicial.

[9] Additionally, we note that Dorgay's argument implies that he wanted trial counsel to introduce the post-Tomahawk, pre-hotel photographs. As we previously observed, this would open the door for the jury to hear more violent details of the Tomahawk incident, and it was reasonable for trial counsel to keep this door closed.

### f. Counsel's failure to object to alleged prosecutorial misconduct regarding Brian Kelly's testimony

¶40    Dorgay's final argument regarding trial counsel's effectiveness is that trial counsel should have objected to alleged prosecutorial misconduct related to Kelly's testimony. In short, Dorgay says that Kelly gave "a completely different account than [Amber], of what took place that evening [at the Milwaukee hotel]," and that it was improper for the State to imply "that Kelly knew more about the Tomahawk incident" and was "hiding it from the jury."

¶41    Dorgay has not made a showing of deficient performance or prejudice. Although some parts of Kelly's testimony contradicted Amber's testimony, Kelly corroborated significant portions of her testimony; other parts of his testimony neither supported nor contradicted Amber's version of events, and on cross-examination, Kelly admitted to knowing more about the Tomahawk incident than he originally let on. Kelly also personally observed Amber's partially-healed injuries from the Tomahawk incident. Given this evidence, there was nothing improper about the State's argument. The jury could infer from this evidence, and the State was allowed to argue, that Kelly's original account (i.e., that he rented and paid for the hotel room so that Dorgay and Amber could have a romantic night together at her request) was false, that Kelly knew details about what happened in Tomahawk despite testifying that he did not know any specifics, and that Kelly was lying to protect his close friend and potential business partner. We reject this basis for relief.

## IV.     Interest of Justice

¶42     Finally, Dorgay seeks a new trial in the interest of justice because, he argues, the real controversy "involving credibility" was not fully tried.[10] WIS. STAT. § 752.35.  This court's discretionary reversal power is formidable and should only be exercised in "exceptional cases."  *State v. Avery*, 2013 WI 13, ¶38, 345 Wis. 2d 407, 826 N.W.2d 60 (citation omitted); *Vollmer v. Luety*, 156 Wis. 2d 1, 11, 456 N.W.2d 797 (1990).  We are reluctant to grant a new trial in the interest of justice, approaching such requests with "great caution."  *Avery*, 345 Wis. 2d 407, ¶38.

¶43     The real controversy here was fully tried.  The jury had every reason to believe Amber because her testimony was strongly corroborated.  The only defense witness, Kelly, contradicted some of her testimony, but he also corroborated much it.  Moreover, Amber's credibility was subject to exacting cross-examination by trial counsel.  Dorgay's absconding from trial was also probative of his guilt and supported Amber's credibility.  We do not find any compelling circumstances that suggest this is an "exceptional case" justifying discretionary reversal.  *Id.* Accordingly, we reject Dorgay's request for a new trial in the interest of justice.

---

[10]  As the legal basis for his request for a new trial in the interest of justice, Dorgay cites to cases of the Wisconsin Supreme Court interpreting and applying WIS. STAT. § 751.06.  *E.g.*, *State v. Hicks*, 202 Wis. 2d 150, 549 N.W.2d 435 (1996); *State v. Cuyler*, 110 Wis. 2d 133, 327 N.W.2d 662 (1983).  Our discretionary reversal power is "coterminous" with that of the Wisconsin Supreme Court, *State v. Avery*, 2013 WI 13, ¶38 n.17, 345 Wis. 2d 407, 826 N.W.2d 60, so we interpret and review Dorgay's argument as requesting this court to exercise its discretionary authority to order a new trial under WIS. STAT. § 752.35.  *See Vollmer v. Luety*, 156 Wis. 2d 1, 17-18, 456 N.W.2d 797 (1990) ("[W]e conclude that, because secs. 751.06 and 752.35, Stats., are identical, the legislature did not intend for the court of appeals' power to reverse under sec. 752.35 to be less than that of the supreme court under sec. 751.06.").

## CONCLUSION

¶44 Dorgay failed to demonstrate that he is entitled to relief because of prosecutorial misconduct, ineffective assistance of counsel, or in the interest of justice. Accordingly, we affirm his judgment of conviction and the circuit court's order denying his motion for postconviction relief.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.